CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 06 2013

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LBCMT 2007-C3 VALLEY RETAIL, LLC, | ) | |
| Plaintiff, | ) | Civil Action No. 7:12CV00179 |
| v. | ) | **MEMORANDUM OPINION** |
| ERIC D. SHEPPARD | ) | By: Hon. Glen E. Conrad<br>Chief United States District Judge |
| and | ) | |
| PHILIP WOLMAN, | ) | |
| Defendants. | ) | |

LBCMT 2007-C3 Valley Retail, LLC filed this diversity action against Eric D. Sheppard and Philip Wolman to recover damages for breach of a loan guaranty agreement. The case is presently before the court on the plaintiff's motion for summary judgment. For the reasons that follow, the motion will be granted as to liability and denied as to damages.

## Background

Sheppard and Wolman are managers of WSG Roanoke, L.P. ("WSG Roanoke"), one of several entities set up by the defendants for the development of retail shopping centers throughout the Commonwealth of Virginia. On July 12, 2007, WSG Roanoke obtained a $2,390,000.00 loan from Lehman Brothers Bank, FSB for the development of a retail site in Roanoke, Virginia. The loan was evidenced by a promissory note ("Note") and secured by a Deed of Trust, Fixture Filing and Security Agreement ("Deed of Trust"), as well an Additional Collateral Assignment of Leases and Rents ("Rent Assignment") and an Assignment of Management Agreement and Subordination of Management Fees ("Management Agreement Assignment").

Under the terms of the Note, WSG Roanoke was required to make loan payments on the eleventh day of each month. (Note at §§ 1(i) & 2(a).) An "Event of Default" occurred "if any payment required in [the] Note prior to the Maturity Date [was] not paid on the date when due." (Id. at § 3.) Upon the occurrence of an Event of Default, the lender was authorized to take certain actions, including declaring the entire unpaid debt immediately due and payable. (Id.)

Under the terms of the Rent Assignment, WSG Roanoke assigned the right to collect rent payments from its tenants to the lender. (Rent Assignment at § 1.1.) The assignment was subject to a revocable license, which allowed WSG Roanoke to collect rent payments until the occurrence of an Event of Default. (Id. at §§ 2.1, 3.1.) Upon the occurrence of an Event of Default, the borrower's license terminated automatically, and the right to collect rent payments reverted to the lender. (Id. at § 3.1.)

The Management Agreement Assignment also contained a provision applicable to the collection of rent payments following an Event of Default. Specifically, WSG Roanoke agreed that "during such periods as an Event of Default . . . may exist . . . , at the option of Lender exercised by written notice to Borrower and Agent[,] . . . all rents, security deposits, issues, proceeds and profits of the Property collected by Agent, after payment of all costs and expenses of operating the Property (including, without limitation, operating expenses, real estate taxes, insurance premiums and repairs and maintenance)[,] shall be applied in accordance with Lender's written directions . . . ." (Management Agreement Assignment at § 6.)

Contemporaneously with the signing of the Note, assignment agreements, and other loan documents, Sheppard and Wolman executed a Guaranty of Recourse Obligations of Borrower ("Guaranty"), pursuant to which they "absolutely and unconditionally" guaranteed "the prompt and unconditional payment of the Guaranteed Recourse Obligations of Borrower (hereinafter

defined)." (Guaranty at 1.) As relevant in the instant case, the "Guaranteed Recourse Obligations of Borrower" included "any and all Losses . . . imposed upon or incurred by or asserted against Lender and directly or indirectly arising out of or in connection with . . . Borrower's misapplication or misappropriation of . . . Rents received by Borrower after the occurrence of an Event of Default." (Id.) The Guaranty and other documents evidencing and securing the loan were ultimately assigned to the plaintiff.

In 2010, Sheppard inquired about refinancing the debt associated with one of the commercial properties. According to the defendants, a representative for the plaintiff advised Sheppard that no single loan could be refinanced, that all of the loans in the portfolio had to be refinanced together, and that refinancing discussions could not proceed until a borrower had missed loan payments for sixty days. Following this conversation, WSG Roanoke stopped making payments on the Note.

On October 28, 2010, LNR Partners, LLC ("LNR"), the special servicer of the loan, sent WSG Roanoke a Notice of Default. The Notice indicated that WSG Roanoke was "in default under the Note and other Loan Documents by virtue of, among other things, its failure to pay all amounts when due thereunder." (Notice of Default at 1.) Nearly six months later, on April 21, 2011, plaintiff's counsel sent WSG Roanoke a Demand Letter and Notice of Acceleration, which stated, in pertinent part, as follows:

> By letter dated October 28, 2010, the Servicer notified Borrower of its default under the terms of the Loan Documents after Borrower failed to pay the amounts due under the note and the other Loan Documents, or any monthly payments since that date. Borrower is in default pursuant to the terms of the Note and the Deed of Trust, and this letter is to advise you that the Noteholder does hereby accelerate the Maturity Date (as defined in the Note) and immediately demands payment of the balance due under the Note and all amounts due under all (or any) of the other Loan Documents . . . .

> This demand and acceleration letter shall also serve as notice that the default under the Note and Deed of Trust for failure to pay the amounts due under the Note and Deed of Trust, and to otherwise comply with the terms of the Loan Documents (collectively, the "Event of Default"), also constituted a default under the Assignment of Rents, the Recourse Guaranty, the Payment Guaranty and any other Loan Documents. The Event of Default resulted in the automatic termination of Borrower's license to collect the Rents (as defined in the Assignment of Rents) under the Assignment of Rents. Any Rents collect[ed] by Borrower after the Event of Default are to be (and to have been) held in trust for the benefit of the Noteholder and should have been and now must be paid to the Noteholder within one (1) business day after receipt by Borrower.
>
> You are hereby directed to immediately pay all such amounts to the Noteholder and to continue to pay any Rents or other revenues received from the Property to the Noteholder. In addition, you are required to remit to the Noteholder all tenant security deposits given to Borrower under all existing leases. The Indemnitor shall be personally liable for Borrower's failure to turn over the security deposits to the Noteholder and any losses incurred by the Noteholder as a result of Borrower's failure to either apply the Rents and revenues to the operating expenses of the Property (and to properly account for the same to Lender) or pay such amounts to Lender. The Noteholder reserves all of its other rights and remedies against the Borrower and the Indemnitor.

(Demand Letter at 2) (emphasis omitted).

WSG Roanoke subsequently failed to pay the balance due under the Note. Consequently, a foreclosure sale was conducted on June 15, 2011, at which the plaintiff purchased the Roanoke retail site.

The plaintiff filed the instant action against Sheppard and Wolman on April 18, 2012. The plaintiff claims that WSG Roanoke improperly withheld rent payments following the issuance of the Notice of Default, and that Sheppard and Wolman are liable for such payments under the Guaranty.

The case is presently before the court on the plaintiff's motion for summary judgment. The motion has been fully briefed and is ripe for review.[1]

---

[1] Neither side requested a hearing on the motion.

## Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-movants. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). To withstand a summary judgment motion, the non-movants must produce sufficient evidence from which a reasonable finder of fact could return a verdict in their favor. Id. at 248. "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the non-movants'] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (quoting Phillips v. CSX Transp., Inc., 190 F.3d 285, 287 (4th Cir. 1999)).

## Discussion

Because the court's jurisdiction is based on the diversity of the parties, the court applies the choice of law rules of Virginia, the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999). In this case, the parties agreed that the Guaranty would be governed by the law of the state where the commercial property is located. Because the property is located in Virginia, the court will apply Virginia substantive law in its review of the plaintiff's claim and the affirmative defenses raised by the defendants.

### I. The Plaintiff's Prima Facie Case

Under Virginia law, a guaranty is "an independent contract, by which the guarantor undertakes, in writing, upon a sufficient undertaking, to be answerable for the debt, or for the

performance of some duty, in case of the failure of some other person who is primarily liable to pay or perform." McDonald v. Nat'l Enters., Inc., 547 S.E.2d 204, 207 (Va. 2001) (internal citations omitted). In an action to enforce a guaranty, a plaintiff may establish a prima facie entitlement to recovery by demonstrating: (1) the existence and ownership of the guaranty; (2) the terms of the primary obligation; (3) default on the obligation by the primary obligor; and (4) nonpayment of the amount due under the guaranty contract. See Id.

**A. The Existence and Ownership of the Guaranty**

In this case, there is no dispute as the first element of the plaintiff's prima facie case. The plaintiff has submitted a copy of the Guaranty on which its claim is based, and the defendants have admitted that they executed the Guaranty. Additionally, it is undisputed that all of the loan documents, including the Guaranty, were assigned to the plaintiff.

**B. The Terms of the Primary Obligations and Default on the Obligations by the Debtor**

The plaintiff has also established the terms of the primary obligations and the borrower's default. The plaintiff has submitted a copy of the Note executed by WSG Roanoke, as well as the Rent Assignment. Under the terms of the Note, an Event of Default occurs when "any payment required in [the] Note prior to the Maturity Dates is not paid on the date when due." (Note at § 3.) It is undisputed that WSG Roanoke failed to make monthly loan payments on more than one occasion in 2010. See 4/2/13 Sheppard Decl. at ¶ 5; Defendants' Br. in Opp'n at 8 (acknowledging that WSG Roanoke "miss[ed] several monthly payments"). It is likewise undisputed that this resulted in the issuance of a Notice of Default and a Demand Letter and Notice of Acceleration. See Defendants' Answer at ¶ 10 (admitting that WSG Roanoke received the Notice of Default and that the Notice "speaks for itself"); Id. at ¶ 13 (admitting that WSG Roanoke received the Demand Letter and Notice of Acceleration and that the document "speaks for itself").

Thus, it is clear from the record that WSG Roanoke defaulted on its payment obligations under the Note.[2]

Upon the occurrence of an Event of Default, the plaintiff regained the right to possess the loan payments collected by WSG Roanoke. Under the Management Agreement Assignment, WSG Roanoke was permitted to pay property-related expenses from the collected rent payments. However, it was required to remit the remainder of the rent payments to the plaintiff.

According to the evidence submitted by the plaintiff, including a sworn declaration, WSG Roanoke has not remitted any rent payments to the plaintiff since the Notice of Default was issued, even though the total amount of rent payments exceeds the amount of property-related expenses to which the payments could have been applied. Although the defendants claim, in their brief in opposition, "that [the] Borrower did, in fact, forward rents to [the] Lender," the defendants do not cite or offer any evidence to support this conclusory assertion. (Defendants' Br. in Opp'n at 7.) In the absence of such evidence, the court concludes that no genuine issue of material fact exists as to this element of the plaintiff's prima facie case. See Law Enforcement Alliance of Am., Inc. v. USA Direct, Inc., 61 F. App'x 822, 826 (4th Cir. 2003) ("Evidence presented in opposition to a motion for summary judgment . . . must be probative, not merely colorable and cannot be merely conclusory statements . . . without specific evidentiary support.") (internal citation and quotation marks omitted).

[2] Rather than disputing the fact that WSG Roanoke failed to make payments within the time required under the Note, the defendants take issue with the wording of the Notice of Default. The defendants emphasize that the Notice "provides no details regarding the . . . purported non-payment," such as "the nature of the missed payments, the dates or amounts of these missed payments, or even how many payments were missed." (Defendants' Br. in Opp'n at 5.) Such criticism, however, is without merit. As the plaintiff notes in its reply brief, the occurrence of an Event of Default does not turn on the amount or number of missed payments. Instead, a single missed payment constitutes an Event of Default under the Note.

### C. Nonpayment of the Amount Due from the Guarantor under the Guaranty Contract

Upon defaulting on its loan payments, WSG Roanoke was required to remit to the plaintiff the remainder of the rent payments collected from tenants after paying property-related expenses. When WSG Roanoke failed to send these payments to the plaintiff, it triggered the defendants' liability under the Guaranty. While the parties disagree as to the precise amount owed by the defendants, it is undisputed that the defendants have not made any payments to the plaintiff to satisfy this debt.

Based on the foregoing, the court concludes that the plaintiff has made a prima facie showing that it is entitled to summary judgment on its claim under the Guaranty.

## II. The Guarantors' Defenses to Recovery

In their answer to the complaint, the defendants assert the following affirmative defenses: waiver, estoppel, and breach of the implied covenant of good faith and fair dealing. For the following reasons, the court concludes that each of the asserted defenses fails as a matter of law.[3]

### A. Waiver

The defense of waiver is defined as "an intentional relinquishment of a known right." See Stanley's Cafeteria, Inc. v. Abramson, 306 S.E.2d 870, 873 (Va. 1983). This defense requires proof that the plaintiff (1) had knowledge of the facts basic to the exercise of the right, and (2) the intent to relinquish the right. See Employers Commercial Union Ins. Co. of Am. v. Great Am. Ins. Co., 200 S.E.2d 560, 562 (Va. 1973). As the parties relying on an alleged waiver, the defendants bear the burden of proving such waiver by "clear, precise and unequivocal evidence." Utica Mutual Ins. Co. v. Nat'l Indemnity Co., 173 S.E.2d 855, 858 (Va. 1970).

[3] In light of the court's rulings, the court need not reach the issue of collateral estoppel raised by the plaintiff in relation to the bankruptcy court's decision in In re WSG Dulles, L.P., 12-11149, 2013 Bankr. LEXIS 34 (Bankr. E.D. Va. Jan. 4, 2013).

These principles, applied in the instant case, compel the conclusion that the defendants' waiver defense is unavailing. The defendants' brief in opposition to the plaintiff's motion provides no discussion of this defense, and contains no allegations which would support the notion that the plaintiff knowingly and intentionally waived its right to recover under the Guaranty. Moreover, the Guaranty expressly provides that it may be waived "only by an agreement in writing signed by the party against whom enforcement of any . . . waiver . . . is sought." (Guaranty at 4.) Under Virginia law, "such clauses must be given effect." Chas. H. Tompkins Co. v. Lumbermens Mut. Cas. Co., 732 F. Supp. 1368, 1377 (E.D. Va. 1990) (citing Chesapeake & Potomac Tel. Co. v. Sisson & Ryan, Inc., 362 S.E.2d 723, 730 (Va. 1987)); see also Trex Co. v. Exxonmobil Oil Corp., 234 F. Supp. 2d 572, 581 (E.D. Va. 2002) (holding that a clause requiring any waiver to be in writing was enforceable under Virginia law and, thus, that the defendant could not rely on a waiver defense absent a written waiver signed by the plaintiff). As no such written waiver has been alleged in any submission by the defendants, the court concludes that the defense of waiver provides no bar to summary judgment in the instant case.

**B. Equitable Estoppel**

The defendants next argue that the plaintiff is barred from recovering under the Guaranty, because WSG Roanoke relied on representations made by the plaintiff that induced its default. Specifically, the defendants allege that Sheppard was told by the plaintiff's representative that refinancing discussions could not proceed until the borrower had missed payments for sixty days, and that WSG Roanoke stopped making payments based on this conversation.

The Supreme Court of Virginia has defined the doctrine of equitable estoppel as "the consequence worked by operation of law which enjoins one whose action or inaction has induced reliance by another from benefiting from a change in his position at the expense of the other."

Employers Commercial Union Ins. Co., 200 S.E.2d at 562; see also Guinness PLC v. Ward, 955 F.2d 875, 899 (4th Cir. 1992) ("Equitable estoppel is designed to protect any adversary who may be prejudiced by [an] attempted change of position."). The doctrine's requirements are "specific and rigorous." Anderson v. Cox, 977 F. Supp. 413, 417 (W.D. Va. 1997). "The elements necessary to establish equitable estoppel are (1) a representation, (2) reliance, (3) change of position, and (4) detriment, and the party who relies upon estoppel must prove each element by clear, precise, and unequivocal evidence." Princess Anne Hills Civil League v. Susan Constant Real Estate Trust, 413 S.E.2d 599, 603 (Va. 1992).

Applying these principles, the court concludes that the asserted defense of estoppel is without merit. Even if an agent of the plaintiff made the representations summarized above, the defendants' submissions are devoid of any allegations sufficient to establish a change of position by the plaintiff. While the defendants suggest that Sheppard was not advised that missed payments would constitute events of default, the defendants have at no point alleged that the plaintiff represented that missing payments would not result in default or otherwise trigger obligations under the loan documents. Likewise, the defendants have not alleged any facts which suggest that the plaintiff offered to waive the terms of the Note, which expressly prohibit oral modifications. See Note at § 9 ("This Note may not be modified, amended, waived, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.").

Additionally, and perhaps most importantly, the Supreme Court of Virginia has made it clear that, "[i]n an action to enforce an independent contract of guaranty, the [plaintiff] is proceeding on the guaranty, not on the underlying note." McDonald, 547 S.E.2d at 207. By the

Guaranty's own terms, which the defendants have recognized speak for themselves, the defendants agreed to be liable for all losses incurred by the lender arising out of or in connection with the borrower's misapplication or misappropriation of rent payments collected after the occurrence of an Event of Default. The defendants' obligations under the Guaranty "are and shall be absolute under any and all circumstances, without regard to the validity, regularity or enforceability of the Note, the Security Instrument, or the other Loan Documents," and "continue in full force and effect as to any modification . . . of the Note, the Security Instrument, or any of the other Loan Documents." (Guaranty at 1, 3.) In the absence of any allegation suggesting that the plaintiff changed its position with respect to the defendants' obligations under the Guaranty, the defense of equitable estoppel provides no bar to summary judgment in this case. See, e.g., U.S. Bank, NA v. Hoffman, 409 F. App'x 302, 303 (11th Cir. 2011) (rejecting the defendant's claim that the bank should be equitably estopped from enforcing a guaranty agreement because the bank's actions and misstatements allegedly contributed to the default of the loan, where the defendant failed to show "how any act or statement made by U.S. Bank is inconsistent with its instant claim seeking payment under the guaranty agreement").

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing

In their final affirmative defense, the defendants claim that they should not be held liable under the Guaranty because the plaintiff breached its implied duty of good faith and fair dealing. Under Virginia law, every contract includes an implied covenant of good faith and fair dealing. See Wolf v. Fannie Mae, No. 11-2419, 2013 U.S. App. LEXIS 4300, at *20 (4th Cir. Feb. 28, 2013) (citing Enomoto v. Space Adventures, Ltd., 624 F. Supp. 2d 443, 450 (E.D. Va. 2009)); Va. Vermiculite, Ltd. v. W.R. Grace & Co., 156 F.3d 535, 541-42 (4th Cir. 1988). However, "no implied duty arises with respect to activity governed by express contractual terms." Skillstorm,

Inc. v. Electronic Data Systems, LLC, 666 F. Supp. 2d 610, 620 (E.D. Va. 2009) (citing Ward's Equip., Inc. v. New Holland N. Am., 493 S.E.2d 516, 520 (Va. 1997)). Thus, "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights," and courts will not use the implied covenant as the "vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." Ward's Equip., Inc., 493 S.E.2d at 520. As explained by the United States Court of Appeals for the Fourth Circuit, "although the duty of good faith does not prevent a party from exercising its explicit contractual rights, a party may not exercise contractual discretion in bad faith, even when such discretion is vested solely in that party." Va. Vermiculite, Ltd., 156 F.3d at 542.

In this case, the terms of the Guaranty signed by the defendants expressly provide that the defendants will be personally liable for any and all losses incurred by the lender in connection with the borrower's misapplication or misappropriation of rent payments received after the occurrence of an Event of Default. There is simply no exercise of discretion involved, and the implied covenant of good faith and fair dealing cannot be used to alter the defendants' express contractual obligations. See LBCMT 2007-C3 W. Broad Street, LLC v. Sheppard, No. 3:12-cv-295, 2013 U.S. Dist. LEXIS 65088, at *15 (May 7, 2013) (rejecting Sheppard and Wolman's affirmative defense of breach of the implied covenant of good faith and fair dealing); LBCMT 2007-C3 Sterling Retail, LLC, No. 1:12-cv-470, 2013 U.S. Dist. LEXIS 69913, at *15 (E.D. Va. May 15, 2013) (same).

Having concluded that each of the defendants' affirmative defenses fails as a matter of law, the court will grant the plaintiff's motion for summary judgment as to liability.

## III. Damages

The plaintiffs seek to recover the rent payments collected by WSG Roanoke during the eight-month period between the issuance of the Notice of Default and the foreclosure sale, minus property-related expenses incurred by WSG Roanoke. Upon review of the evidence submitted by the parties, the court concludes that a genuine dispute of material fact exists as to the amount owed by the defendants. Although the plaintiff claims that WSG Roanoke received $171,037.00 in rental income from October 28, 2010 to June 15, 2011, the defendants have produced evidence indicating that WSG Roanoke only received $105,569.73 in rental income during that time period. Additionally, the amount of property-related expenses incurred by WSG Roanoke during that time period is in dispute. In light of these factual conflicts, the court must deny the plaintiff's motion for summary judgment with respect to damages.

## Conclusion

For the reasons stated, the plaintiff's motion for summary judgment will be granted as to liability and denied as to damages.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 14th day of August, 2013.

[signature]

Chief United States District Judge